

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 1:14-CR-144 |
| | ) |
| DAVID AGUILAR, | ) Hon. Claude M. Hilton |
| | ) |
| Defendant. | ) |

STATEMENT OF FACTS

Were this matter to go to trial, the United States of America would prove the following facts beyond a reasonable doubt with admissible and credible evidence:

1. Beginning in and around 2009 up through and including October 2011, in the Eastern District of Virginia and elsewhere, in Arlington County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant, DAVID AGUILAR, did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree with Rocky Anthony Langone, Gilbert Mosqueda (a/k/a "Reek") and Rene Castillo, Jr. (a/k/a "Mundo"), Eray Basaran, Miguel Parral, and others, both known and unknown, to unlawfully, knowingly and intentionally distribute 100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. Beginning in and around 2009 up through and including October 2011, in Arlington County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant, DAVID AGUILAR, did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to unlawfully and knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, involving

the proceeds of a specified unlawful activity, to wit: conspiracy to distribute marijuana, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of illegal activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and (h).

3. During the course and in furtherance of the conspiracy, the defendant acquired multiple pound quantities of marijuana for further distribution throughout the Eastern District of Virginia and elsewhere. During the course and in furtherance of the conspiracy, the defendant was personally involved in the distribution of, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least one hundred (100) kilograms but less than four hundred (400) kilograms of marijuana.

4. In and around the fall of 2009 in San Jose, California, the defendant sold approximately three (3) pounds of marijuana to two of his co-conspirators, Eray Basaran ("Basaran") and Miguel Parral ("Parral"), in exchange for $14,000 in U.S. currency which Basaran and Parral carried with them on a commercial airplane form the Eastern District of Virginia to California. Basaran and Parral then shipped the marijuana back to the Eastern District of Virginia via Federal Express ("FedEx").

5. In and around the fall of 2009, Parral and Basaran again traveled from the Eastern District of Virginia to San Jose, California where they purchased approximately four (4) pounds of marijuana from the defendant. During this transaction, Langone and Mosqueda MOSQUEDA were present, and the defendant introduced them as his "associates." Parral and Basaran flew

back to the Eastern District of Virginia, but shipped the marijuana, via FedEx, to a location in Arlington, Virginia.

6. From in and around January 2010 through in and around the summer of 2011, the defendant shipped approximately three (3) to four (4) pounds of marijuana per week to Parral and Basaran at a cost of approximately $3,200 to $3,500 per pound. The defendant usually "fronted" the marijuana to Parral and Basaran, who would then pay the defendant after they sold the marijuana in the Eastern District of Virginia and elsewhere.

7. During the course and in furtherance of the conspiracy, and in order to conceal or disguise the nature, location, source, ownership or control of the proceeds of the marijuana sales, Basaran, Parral and other co-conspirators collected and combined marijuana cash proceeds from many customers in the Eastern District of Virginia. After the cash proceeds were collected, the proceeds were deposited into bank accounts provided by the defendant in the Eastern District of Virginia, and the money was subsequently withdrawn by the defendant and his co-conspirators in California. Throughout the conspiracy, Basaran, Parral, the defendant and other co-conspirators utilized at least seventeen (17) different accounts, and a total of approximately $1,189,544 was deposited into these accounts in the Eastern District of Virginia by Basaran, Parral and their co-conspirators. In addition, the defendant also instructed Basaran and Parral to utilize Western Union to deposit proceeds from the sale of the marijuana provided by the defendant. Finally, Basaran and Parral also traveled to California on several occasions in 2010 and 2011 to transport large amounts of money, on their persons, to the defendant for the purchase of marijuana. Between March 25, 2010 and September 2, 2011, approximately seventy-one (71) mailing labels were identified as packages of marijuana that were mailed from the

3

defendant to his co-conspirators who then mailed back packages of payments.

8. On or about September 21, 2010, law enforcement officers intercepted a FedEx package sent from Parral in Arlington, Virginia, to the defendant's address in San Jose, California. On September 22, 2010, following a positive indication by a law enforcement K-9 trained in the detection of illegal narcotics, a search warrant was obtained and executed on the package resulting in the seizure of approximately $23,300 in United States currency. Following this seizure, the defendant contacted Parral and advised him to no longer ship with FedEx in order to avoid future detection by law enforcement.

9. In late 2010, the defendant and Mosqueda contacted Parral to arrange for Mosqueda to "front" Parral fifteen (15) pounds of marijuana. Langone and the defendant flew to the Eastern District of Virginia. Parral and Basaran previously provided three locations in the Eastern District of Virginia to which the defendant shipped marijuana from San Jose, California. Upon arrival in Virginia, the defendant and Basaran drove to the three locations in Falls Church and Arlington, Virginia, to pick up the parcels shipped from San Jose, California. All three parcels contained marijuana. Over the next two weeks, Basaran distributed the marijuana in the Eastern District of Virginia, and elsewhere, while the defendant, LANGONE, and an unindicted co-conspirator, stayed at local hotels waiting for Parral and Basaran to pay for the marijuana.

10. Between in and around January 2011 through in and around April 2011, Parral and Basaran received approximately thirty (30) pounds of marijuana at a cost of approximately $3,300 per pound from LANGONE and other co-conspirators.

11. On or about September 2, 2011, law enforcement officers intercepted a UPS package addressed to Basaran from a UPS Store in San Jose, California. On September 2,

4

2011, following a positive indication by a law enforcement K-9 trained in the detection of illegal narcotics, a search warrant was obtained and executed on the package resulting in the seizure of approximately five (5) pounds of marijuana.

12. The acts taken by the defendant in furtherance of the offense charged in this case, including the acts described above, were done wilfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing Statement of Facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that he is obligated under this plea agreement to provide additional information about this case beyond that which is described in this Statement of Facts.

13. The Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: *[signature]*
Elizabeth N. Eriksen (LT)
Special Assistant United States Attorney

### Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
DAVID AGUILAR
Defendant

### Defense Counsel's Signature

I am the attorney for DAVID AGUILAR. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

_____
William B. Cummings, Esq.
Counsel for the Defendant